JOSEPH McCORMICK *v.* ARTHUR HULLCOAT
[No. 32, April Term, 1938.]

494

*Decided May 20th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Leonard Weinberg* and *George H. Dowell,* with whom were *Zanvyl Krieger* and *Weinberg, Sweeten & Green* on the brief, for the appellant.

*Wendell D. Allen,* with whom were *Alexander Gordon, 3rd,* and *Armstrong, Machen & Allen,* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from a judgment of *non pros,* entered by the Court of Common Pleas of Baltimore City after hearing testimony upon appellee's motion therefor.

Joseph McCormick, plaintiff below and appellant herein, while riding with Arthur Hullcoat in the automobile of the latter near Mitchellsville, Prince George County, on August 30th, 1937, claimed to have sustained serious, painful, and permanent injuries when the Hullcoat machine struck and collided with an automobile truck of Triangle Auto Supply Company, Inc., the other defendant, because of the negligent manner in which both vehicles were operated, and subsequently brought the suit to recover damages for such injuries.

Upon being returned summoned, Hullcoat moved for judgment of *non pros* for want of jurisdiction in that court, assigning as a reason therefor, that "at the time this suit was brought he did not, nor does he now reside in Baltimore City; nor was he then nor is he now engaged in any regular business or employment in said City, but that he now resides and at the time of issuing the summons in this case he did reside in Darlington, Harford County, and that no summons has been issued against him and returned 'non est' in Harford County." A demurrer to that motion having been overruled, the trial court proceeded to hear testimony, from which it appears that the defendant had since 1936 lived at Darlington, Harford County, Maryland, upon a farm on which he kept race horses, both for himself and others; that since that date he had raced them at tracks in different parts of the country, including Maryland, several New England States, New Orleans and Arkansas. For several years he had raced at Pimlico, also at Havre de Grace and Timonium. Pimlico held two events a year, the spring meeting lasting twelve days, and the fall meeting thirteen days. It is further shown that Hullcoat did not race at Pimlico in the fall of 1937, his connection with the fall meeting having been limited to attendance as a spectator on one or two occasions. When racing horses at such meetings, whether at Pimlico or elsewhere, Hullcoat maintained quarters at some hotel or rooming-house convenient to the track.

Section 157 of article 75 of the Code, providing that no person shall be sued out of the county in which he resides until he has been returned non est on a summons issued therein, is qualified to the extent that "any person who resides in one county but carries on any regular business, or habitually engages in any avocation or employment in another county, may be sued in either county, whether before a justice of the peace or in a court of law or equity * * *."

The word "avocation" was not used in the motion for judgment of *non pros*, and its omission is urged by ap-

pellant in support of the demurrer. Therefore, the narrow question presented by the demurrer is whether that word and the word "employment," as they appear in the statute, were used synonymously. If the words were so used, it is conceded that the court's action in overruling the demurrer was proper.

, In support of his contention that the word "avocation" was not so used, appellant relies, first, upon the fact that the words are used in the statute disjunctively. He also places reliance upon the literal meaning of the word "avocation," signifying a calling away, and cites decisions from many other jurisdictions to support the contention that the word has an entirely different meaning from employment, and it must be admitted that some of the authorities to which he refers tend to support this contention.

The words appear to have first been incorporated in the statute by virtue of chapter 456 of the Acts of 1888, since which time they have remained unchanged, and although the section in question has been considered by this court in many decisions, we are aware of none and are referred to none bearing directly upon the point in question. In many of our adjudicated cases, the motion included the word "avocation," while in others it was omitted, yet in considering them the court apparently made no distinction between the two classes. An apt illustration of this is found in the very recent case of *Woodcock v. Woodcock,* 169 Md. 40, 179 A. 826, where Judge Mitchell, speaking for this court, said (page 827) :

"Briefly, the plea set forth the residence of the respective parties to the suit; alleged that the defendant had continuously resided in Wicomico County; that he had not engaged in any regular business or employment in Baltimore City; that the sheriff or coroner had not returned a 'non est' on a summons in said county against him; that he was not, therefore, subject to process in any civil action in equity of the nature of the case against him, out of the county of his residence, and prayed that the return of the sheriff upon the writ of subpoena issued

from the Baltimore court against him be quashed, and that the original bill of complaint be dismissed."

See, also *Gemundt v. Shipley,* 98 Md. 657, 57 A. 12; *Chappell v. Lacey,* 77 Md. 172, 173, 26 A. 499; *Carter v. Reardon-Smith Line,* 148 Md. 545, 129 A. 839; *National Bank v. Steele,* 143 Md. 484, 122 A. 633; *Ginsberg, Pleading at Law in Maryland,* p. 107.

This to our minds is strongly indicative of the fact that, in dealing with the section, this court considered that the word "avocation" was used as a synonym for the word "employment." Moreover, from examples which lexicographers give of its use, the statement that in the nineteenth century it often signified "employment" seems not unwarranted. See *Godwin, The Enquirer; Sydney Smith; Macaulay's Essay on Warren Hastings; Buckle's History of Civilization.*

This view also finds support in many of the earlier dictionaries, and those of modern times gives its variant meaning as "vocation" or "customary employment." *Webster's New International Dictionary;* 1 *Century Dictionary,* 1889, p. 396; 1 *Oxford Dictionary,* 1880, p. 586; *Funk & Wagnalls' New Standard Dictionary;* 1 *New Century Dictionary,* p. 92. See, also, 1 *Words and Phrases,* First Series, p. 654; 1 *Words and Phrases,* Third Series, p. 753.

From these considerations, we are of the opinion that the demurrer was properly overruled.

In view of this conclusion, the correctness of the court's action in granting the motion for judgment of *non pros.* becomes apparent, in view of the evidence to which we have previously made reference.

*Judgment affirmed, with costs.*